298 APPELLATE COURTS OF ILLINOIS.

Toledo Bridge & Crane Co. v. Oil Belt Traction Co., 173 Ill. App. 298.

## Toledo Bridge and Crane Co., Plaintiff in Error, v. Oil Belt Traction Co., Defendant in Error.

1. GUARANTY—*release.* Where plaintiff enters into a contract with a broker to build certain bridges, on behalf of defendant, a railroad company, which guaranties the payment therefor, the fact that payment was made to the broker by defendant does not operate as a release from the contract of guaranty.

2. AGENCY—*when obligor is not agent for obligee.* Where a broker is instrumental in securing for plaintiff the work of constructing certain bridges for defendant and at the request of defendant the contract is made between plaintiff and the broker on defendant becoming guarantor for the payment, the broker is not the agent of plaintiff in the receipt of money from defendant, as payment in satisfaction of its guarantee and the fact that the secretary of the defendant company stated that they considered the broker as plaintiff's agent, is immaterial.

3. GUARANTY—*extent of liability.* A guarantor for the payment of an amount named in a contract is not liable beyond that amount as for demurrage or damages that may accrue.

Error to the Circuit Court of Crawford county; the Hon. ENOCH E. NEWLIN, Judge, presiding. Heard in this court at the March term, 1912. Reversed and remanded. Opinion filed June 5, 1912.

BENJAMIN & ROODHOUSE, for plaintiff in error.

CALLAHAN, JONES & LOWE, for defendant in error.

MR. JUSTICE McBRIDE delivered the opinion of the court.

In this case the jury was waived and trial had by the judge of the Circuit Court of Crawford county, by consent, which resulted in a finding and judgment in favor of the plaintiff for $303.67, from which judgment the plaintiff prosecutes his appeal and insists that the judgment should have been for $1,831.33.

During the fall of 1900, the defendant in error, hereinafter called the defendant, was engaged in building a railroad near Oblong, Illinois, and was contemplating the building of three bridges along this railroad.

The plaintiff in error, hereinafter called the plaintiff, had submitted to the defendant on September 18th a bid with certain specifications for the building of these bridges and on September 28th, submitted to it a revised proposition. The Empire Railway Supply Company, hereinafter called the Supply Company, was a broker having its office in Chicago, and was instrumental in having the plaintiff bid upon the building of these bridges, for which the plaintiff had prior to that time agreed to pay the Supply Company two hundred dollars. After receiving the bid, or proposition, of September 28th, Mr. Murran and Mr. Upson, president, secretary and general manager of the defendant went to Chicago for the purpose of seeing W. W. Curtis, representative of the plaintiff, and through a communication from a Mr. Kadish, a representative of the Supply Company, met Curtis at a hotel in Chicago and talked over the proposition that had been made by the plaintiff to the defendant for the building of these bridges, and in that conversation the president and secretary of the defendant told Mr. Curtis that the proposition made by the plaintiff was satisfactory but they preferred to have the plaintiff make the contract with the Supply Company, without explaining why, and Mr. Curtis told them that this would be satisfactory to him if they would guarantee the payment, that he did not think the Supply Company financially responsible. On October 4, 1909, the plaintiff submitted to the Supply Company a proposition for the building of these three bridges, giving the specifications and the details with reference to the work to be done by the plaintiff, for which the Supply Company was to pay plaintiff eighty-six hundred dollars ($8,600.00), fifty per cent of the contract price of each span to be paid on the delivery of the material at Oblong, Illinois, and the balance on the completion of the work, and this proposition contained this clause: "We are to be given satisfactory assurance of your ability to pay for this work in accordance with the contract." On October 15, 1909, the Supply Company forwarded

300        APPELLATE COURTS OF ILLINOIS.

Toledo Bridge & Crane Co. v. Oil Belt Traction Co., 173 Ill. App. 298.

to plaintiff an acceptance of its proposition, which acceptance contained the following clause, among others, "We take pleasure in handing you herewith the guaranty of the Oil Belt Traction Company of Oblong, Illinois, for the payments as provided in the agreement above referred to." "Payments for this work will be made direct from this office upon advice of the Oil Belt Traction Company that such material has been delivered at Oblong, Illinois;" and this acceptance was signed Empire Railway Supply Company, J. W. Kadish, treasurer; and in this acceptance of the Supply Company was inclosed the following letter:

"Oblong, Ill., Oct. 6, 1909.
THE TOLEDO-MASSILLON BRIDGE CO.,
        Chicago, Ill.

GENTLEMEN:—With reference to the contract for the one 78½ ft. through plate girder bridge and the two 80 ft. through plate girder spans, made between your Company and the Empire Railway Supply Company, and in conformity with our verbal agreement with your Mr. Curtis a few days since in Chicago, we beg to advise that the Oil Belt Traction Company hereby guarantees the payment for the same. We understand this to be fifty per cent upon delivery of material at this point and the remaining fifty per cent upon completion of the work.

Trusting this will be satisfactory and that you will proceed at once with the work, we beg to remain,
                Very truly yours,
                        GEO. P. MURRIN,
                                President.
                        N. L. UPSON,
                                Secretary.
Oil Belt Traction Company Seal."

It also appears from the evidence that afterward the name of the Toledo-Massillon Bridge Company was changed to Toledo Bridge and Crane Company. This contract was accepted by the plaintiff in Toledo, Ohio, and in pursuance thereof the plaintiff proceeded to furnish the material and deliver it at Oblong, in accordance with the contract and actually constructed

one of the bridges. The plaintiff employed the Ferro Construction Company to erect these bridges at a cost of $1,640.00. After the erection of the first bridge there was much difficulty encountered in putting up the other two bridges, in consequence of the defendant not being ready to have them constructed. Repeated demands were made by the plaintiff to build the bridges which resulted in a proposition to deduct two-thirds of the $1,640 from the contract price and allow the Supply Company, or defendant, to build the other two bridges. This, however, is not very clear from the testimony but has been treated by counsel for appellant and appellee in their argument, statements and computations as having been agreed to, and in their statements the amount of $1,093.33 is presented as having been deducted from the contract price. The defendant also demands $77.00 as demurrage that it claims to have paid for the plaintiff and should be deducted. There was also $58.00 that plaintiff claims as extra work in unloading cars on account of the fault of the defendant. Counsel for defendant in his argument insists that the court allowed plaintiff this $58.00 and that was all that it could ask for.

It further appears from the evidence that the defendant entered into a contract with the Supply Company for the building of these bridges at the price of $10,500.00. Counsel for defendant in his brief states the account as follows:

For three bridges as per contract...........$8,600.00
For unloading two bridges (extra)..........    58.00
                                            ----------
   Total ................................$8,658.00
Cash paid for bridges..............$7,183.34
Demurrage ......................    77.00
Relief from erecting two bridges...  1,093.33
                                  ----------
   Total ......................$8,353.67 $8,658.00
                                          8,353.67
                                          ----------
                                          $  304.33

This includes a payment made by defendant to the plaintiff of $1,383.34 and the remainder of it was paid by the defendant to the Supply Company but the Supply Company has not paid the plaintiff the amount due it upon this contract by about fourteen hundred dollars. The defense in this case was that in as much as this money had been paid by the defendant to the Supply Company that the Supply Company was the agent of the plaintiff, and that defendant was thereby relieved from paying this amount under its guaranty contract; and this is the principal contention and in fact the only question necessary to be determined in the view we take of this case. There were other questions sought to be made by the pleadings but they have not been presented or argued in the briefs of counsel and have not been considered by this court.

The suit was brought by the plaintiff against the defendant upon its guaranty contract above set forth and a special count filed setting forth the terms of the contract with the Supply Company, and the terms of the guaranty of the defendant, and asking that the defendant be required to make payment of the balance due from the Supply Company to the plaintiff under such guaranty.

We will first determine whether or not the Supply Company was the agent of the plaintiff in the building of these bridges and authorized by it to receive the money and give acquittances to the defendant for the plaintiff. It is true, as stated by counsel for defendant, that the undertaking of the guarantor is to be strictly construed and that he is bound to the extent mentioned in his obligation and no further, and this principle is well stated in the case of Tolman Co. v. Rice, 164 Ill. 255. It is also true that if the Supply Company was the agent of the plaintiff and authorized to receive this money and discharge the debt, that the payment to such agent would be good.

The contract of guarantee offered in evidence seems to us to be very plain and specific. It refers to the

contract made by plaintiff with the Empire Railway Supply Company for the three bridges, describing them in a general way and then says, "And in conformity with our verbal agreement with your Mr. Curtis a few days since in Chicago, we beg to advise that the Oil Belt Traction Company hereby guarantees the payment for the same. We understand this to be fifty per cent upon the delivery of material at this point and the remaining fifty per cent upon the completion of the work." To our mind this undertaking is clearly a guarantee of the payment of the price contracted by the Supply Company with the plaintiff for the three bridges mentioned in the guarantee and in the contract, and if the Supply Company failed to pay for these bridges according to contract then it became the duty of the defendant as guarantor to pay for the same unless in some manner released from the obligation. It is insisted by counsel for defendant that in as much as the contract between the plaintiff and the Supply Company contained the provision that, "Payments for this work will be made direct from this office upon advice of the Oil Belt Traction Company that such material has been delivered at Oblong, Illinois," effected a release of the guarantor when it paid the money to the Supply Company as it had agreed with the Supply Company to do; we are unable to see how this can in any manner be construed as a release or discharge of the guarantee. The contract between plaintiff and the Supply Company was that payments were to be made direct from the office and upon the advice of the defendant that the material had been delivered as contracted for, and the effect of the guarantee was that if these payments were not made the defendant would make them. The guarantee was not as to the manner of payment but was broader and extended to the payment for the bridges; in our judgment it can make no difference that one payment of this money was made direct by the defendant to the plaintiff. The guarantee called for the payment of the

304     Appellate Courts of Illinois.

Toledo Bridge & Crane Co. v. Oil Belt Traction Co., 173 Ill. App. 298.

money for the bridges and it was immaterial in what manner it was paid so that the payment was made to the plaintiff.

Again, it is insisted by defendant that the Supply Company was the agent of the plaintiff. We fail to find any evidence in this record warranting such a conclusion. It is true, Mr. Muchmore, the secretary of the defendant stated that they made the payments to the Supply Company, "because we considered them the agents, the men we were dealing with." The fact that the defendant's secretary may have considered it so, could not make it the agent.

Again, it is claimed that the plaintiff recognized the Supply Company as its agent by a letter written by it on June 30, 1910, to the defendant in which it is stated, "It was understood and had been so understood that the Empire Railway Supply Company were acting as our agents and we agreed to pay them a two hundred dollar commission for securing the work for us." This quotation does not correctly set forth the merits of that letter. The quotation was only a part of a history of the case that was being given by the plaintiff to the defendant, after the plaintiff had learned that the officers of the defendant had contracted with the Supply Company for these bridges at the advance price of $10,500.00, and in this history it was explaining the attitude that the Supply Company had sustained to the plaintiff prior to the making of the contract. The relation of the Supply Company and the plaintiff, prior to the execution of the contract and guarantee, was well understood by the then managing officers of the defendant, and the Supply Company never would have sustained any other relation to the plaintiff had it not been for the request of the defendant, in which the defendant was unwilling to make the contract but wanted the plaintiff to contract with this broker, the Supply Company. The Supply Company had accomplished what it undertook to do for the plaintiff and as soon as the Supply Company, at the

request of the defendant, made a contract with the plaintiff for the plaintiff to furnish it the bridges, in our judgment the agency ceased and from that on the plaintiff and the Supply Company sustained the relation of contractor and contractee. There is nothing in this record to warrant this court in finding that the Supply Company was the agent of the plaintiff in the receipt of this money. When the defendant paid the Supply Company the several amounts it did, upon these bridges, it did no more than it had agreed with the Supply Company it would do, and if the defendant wanted to protect itself under its guarantee it should have seen to it that the plaintiff received its part of the payments, and it was so understood by the defendant and its officers, for in a letter written by F. G. Viger, attorney of defendant, to the plaintiff dated July 6, 1910, and at the time when plaintiff was demanding the payment of the amounts due it, he informed the plaintiff that he had advised the board of directors of the defendant that they were responsible for the entire amount and was asking the indulgence of the plaintiff for a few days, and that they would see that the plaintiff did not lose anything. A. Mr. Murrian in a letter of July 7, admits that everything claimed by plaintiff was in accordance with his understanding and that the defendant would still stand by the guarantee and also expressed a regret that they did not make the payment of the guarantee, as, "I see now we should have done," but did not do so because they thought the Supply Company were honorable gentlemen. These and many other matters show very clearly that the officers of the defendant understood that the defendant was liable to the plaintiff for the balance unpaid to the plaintiff upon these bridges.

Counsel in their briefs, also argue the question of demurrage and damages accruing to plaintiff by reason of having to unnecessarily unload the bridges. It is not necessary to go into the details of these mat-

ters but it is sufficient to say that the contract of guarantee cannot be extended beyond the amount contracted by the Supply Company with the plaintiff to be paid for these bridges, and cannot be made, in our judgment, to include matters that are not part of such payments.

We are of the opinion that the court erred in charging the plaintiff with moneys paid by the defendant to the Supply Company that did not reach the plaintiff, and in holding that such payments were in satisfaction of the defendant's guarantee.

The judgment of the Circuit Court is reversed and cause remanded for further proceedings, in conformity with the views herein expressed.

*Reversed and remanded.*